UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARK PRIETO,

                                 Plaintiff,        **MEMORANDUM OF DECISION AND ORDER**
                                                                04-CV-4413 (DRH) (MLO)

      - against -

ELECTION.COM and CHARLES SMITH,

                              Defendants.
----------------------------------------------------------X

**A P P E A R A N C E S :**

**For the Plaintiff:**
**Zabell & Associates, P.C.**
700 Lakeland Avenue
Bohemia, New York 11716
By: Saul D. Zabell, Esq.

**For the Defendants:**
**Mohen & Treacy LLP**
186 Birch Hill Road
Locust Valley, New York 11560-1832
By: Thomas P. Mohen, Esq.
    Kathryn Nicklas Gull, Esq.

**HURLEY, District Judge:**

        Presently before the Court is the motion by defendants Election.com and Charles Smith ("Smith") (collectively, "Defendants") to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted and the Amended Complaint is dismissed.

*BACKGROUND*

        Plaintiff Mark Prieto ("Plaintiff") is a former employee of Election.com. Essentially, Plaintiff alleges that Election.com breached various employment-related contracts with Plaintiff and that Smith made false representations to Plaintiff with the intent to induce

Plaintiff to enter into these agreements. Plaintiff's allegations arise out of four contracts. On July 1, 2002, Plaintiff entered into an Employment Agreement, pursuant to which Plaintiff's employment with Election.com was to continue from July 1, 2002 through January 1, 2005, and Plaintiff was to receive an annual salary of not less than $250,000, together with stock option rights to purchase 1,250,000 shares of stock to vest over a defined period of time. (Compl. ¶¶ 11-12.) On or about July 31, 2002, Plaintiff entered into a Stock Option Agreement, pursuant to which Plaintiff received options to purchase 1,492,500 shares of stock in Election.com. (*Id.* ¶ 13.)

Thereafter, on October 30, 2002, Plaintiff entered into a Management Continuity Agreement which provided in part that "'[i]n the event that there is a Change in Control of the Company' Plaintiff 'shall be entitled to receive from the company' a lump sum payment representing 5% of the value of the assets sold, and salary continuation for 36 months and other ancillary benefits which included immediate vesting of stock options. In addition, the agreement provided that the company shall pay all costs incurred in Plaintiff enforcing the provisions of this agreement." (*Id.* ¶ 14.)

Finally, on May 22, 2003, Plaintiff entered into a Release Agreement whereby he agreed to release Election.com from "all liabilities previously incurred, except for the benefits contained in the Management Continuity Agreement in exchange for receipt of $203,676.90." (*Id.* ¶ 15.)

Plaintiff alleges that Election.com failed to honor its obligations under all four of these agreements "with the purpose of inducing Plaintiff to continue employment with them when they had no intention of honoring any of the negotiated agreements." (*Id.* ¶ 16.) The

2

Amended Complaint asserts four claims of breach of contract, one ERISA violation, one claim under the New York Labor Law, and one claim for fraud. Defendants move to dismiss the Amended Complaint in its entirety on several grounds, including that Plaintiff cannot establish subject matter jurisdiction. Plaintiff opposes the motion and, alternatively, moves for leave to amend. Because the Court finds that Plaintiff has failed to allege a basis for federal jurisdiction, whether it be diversity or ERISA, and because the Court further declines to exercise supplemental jurisdiction over the remaining state law claims, Defendants' motion is granted and the case is dismissed.

## DISCUSSION

### I. *Applicable Law and Legal Standards*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

Although a court in deciding a Rule 12(b)(6) motion is generally limited to considering the facts alleged in the complaint, a district court may also consider documents attached to the complaint or incorporated in it by reference. See, e.g., *Stuto v. Fleishman*, 164 F.3d 820, 826 n. 1 (2d Cir. 1999). In addition, a court may also consider documents outside the pleadings if they are "integral" to the complaint and upon which the complaint relies. *See International Audiotext Network, Inc. v. American Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir.

1995) ("Although the amended complaint in this case does not incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is 'integral' to the complaint, and we consider its terms in deciding whether [plaintiff] can prove any set of facts that would entitle it to relief."). Courts apply this exception where, as here, a plaintiff sues primarily on the basis of a document, such as a contract, and only attaches selected portions of that document, or fails to attach the document at all. *See id.*; see also *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("In addition, we have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.") (citing *I. Meyer Pincus and Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir. 1991)).

In the instant case, the Amended Complaint refers to various contracts that are integral to Plaintiffs' claims and quotes select provisions but does not attach copies as exhibits. The Proposed Second Amended Complaint, however, does attach the contracts as exhibits. Accordingly, pursuant to the authority as stated above, in deciding Defendants' motion under Rule 12(b)(6), the Court will consider the contracts in their entirety.

## II.     *The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim*

### A.     *Diversity Jurisdiction*

District courts have diversity jurisdiction where the matter in controversy exceeds $75,000 and the suit is between "citizens of different States." 28 U.S.C. § 1332(a)(1). "It is well established that for a case to fit within this section, there must be 'complete' diversity. Diversity

4

is not complete if any plaintiff is a citizen of the same state as any defendant." *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) (citations omitted). For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

Here, the Amended Complaint alleges that Plaintiff is a domiciliary and a resident of New York. (Am. Compl. ¶ 5.) Although there are no jurisdictional allegations regarding Smith in the Amended Complaint, Plaintiff's Proposed Second Amended Complaint alleges that Smith is a domiciliary and resident of New York. (Proposed Second Am. Compl. ¶ 7.) Accordingly, as there is not "complete" diversity between the parties, there is no diversity jurisdiction over the instant dispute.

Moreover, both the Amended Complaint and the Proposed Second Amended Complaint allege that Election.com is a "Delaware corporation with offices at 1 Firethorne Lane, Valley Stream, New York authorized to do business in the State of New York. (Am. Compl. ¶6; *see also* Proposed Second Am. Compl. ¶ 6.) Defendants contend that Election.com's principal place of business is in New York, an allegation Plaintiff does not deny. Thus, even if Plaintiff were to dismiss Smith from the lawsuit, diversity jurisdiction would still be lacking as both Plaintiff and Election.com are New York citizens for diversity purposes. Accordingly, the Court lacks diversity jurisdiction over the present lawsuit.

### B. ERISA Jurisdiction

Having found that Plaintiff has failed to allege diversity jurisdiction, Plaintiff's ERISA claim remains the sole basis for federal jurisdiction. Thus, the Court will examine the

whether Plaintiff states a valid ERISA claim.

"To state a claim under ERISA, a plaintiff must allege and establish the existence of an 'employee benefit plan' that is governed by ERISA." *Albers v. Guardian Life Ins. Co. of Am.*, No. 98 Civ. 6244, 1999 WL 228367, at *2 (S.D.N.Y. Apr. 19, 1999) (citing 29 U.S.C. § 1003(a)); *see also Adams v. Intralinks, Inc.*, No. 03 Civ. 5384, 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004). Contrary to Plaintiff's claim that the existence of an ERISA plan is a question of fact, whether a plan is governed by ERISA "is cognizable on a Rule 12(b)(6) motion; where the record contains the undisputed terms of the disputed plan, as the record does here, a Court may decide the applicability of ERISA as a matter of law." *Foster v. Bell Atl. Tricon Leasing Corp.*, No. 93 Civ. 4527, 1994 WL 150830, at *1 (S.D.N.Y. Mar. 29, 1994); *see also Hahn v. National Westminster Bank, N.A.*, 99 F. Supp. 2d 275, 277 (E.D.N.Y. 2000).

There are two distinct types of employee benefit plans under ERISA, "employee welfare benefit plans" and "employee pension benefit plans." *Adams*, 2004 WL 1627313, at *7; *Berg*, 105 F. Supp. 2d 121 at 126. Here, Plaintiff alleges that Election.com "established . . . an 'employee welfare benefit plan' within the meaning of ERISA . . . to provide stock options to its employees," (Am. Compl. ¶ 7), and that "Plaintiff was denied the opportunity to exercise his fully vested stock options for the purpose of interfering with the attainment of rights to which he was entitled to under the Stock Option Policy in violation of ERISA § 510, 29 U.S.C. § 1140." (*Id.* ¶ 29.) In addition, in Plaintiff's memorandum of law in opposition to the instant motion, Plaintiff argues that the Stock Option Agreement is an employee benefit plan governed by ERISA." (Pl.'s Mem. at 9.) The question before the Court, then, is whether the Stock Option Agreement constitutes an employee welfare benefit plan within the meaning of ERISA.

The term "employee welfare benefit plan" is defined by ERISA as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). In the instant case, the Stock Option Agreement merely provides that Plaintiff has the option to purchase up to 1,492,500 shares of Election.com common stock at a specified price per share. It further provides that this right shall vest immediately and shall expire on the tenth anniversary of the date of the agreement.

Because stock option plans are designed to operate as incentive and bonus programs rather than to provide employees with any of the benefits specified in 29 U.S.C. § 1002(1), "most courts have uniformly held that an incentive stock option plan is not an ERISA plan." *Oatway v. American Int'l Group, Inc.*, 325 F.3d 184, 188 (3d Cir. 2003); *see also Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575-76 (5th Cir. 1980) (concluding that employee bonus plan was not an ERISA plan); *Rivera Sanfeliz v. Chase Manhattan Bank*, 349 F. Supp. 2d 240, 247 (D. P.R. 2004) ("Stock option plans . . . (which do not provide medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment) have been found not to fall under the definition of a welfare plan since they do not provide the type of benefits a welfare plan contemplates."); *Raskin v. CyNet*, 131 F. Supp. 2d 906, 910 (S.D. Tex. 2001) (finding that stock option agreement was not an ERISA welfare plan because an

7

option to purchase stocks is not included in the list of benefits specified in section 1002(1));
*Hahn*, 99 F. Supp. 2d at 278 n.2 (finding that stock plan was not ERISA welfare plan as "it was clearly not established to provide the benefits referred to" in section 1002(1)).

As the Fifth Circuit explained in *Murphy*, in enacting ERISA, Congress did not "attempt to control every aspect of the employer-employee relationship or every promise made to employees." 611 F.2d at 574. Rather, "[i]t sought only to deal with those types of plans that had created the problems it sought to remedy[:]"

> Congress found, inter alia, that there was a lack of employee information and of safeguards concerning the operation of employee benefit plans; that many employees with long years of employment were losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that, owing to the inadequacy of minimum standards for plan operation, the plans might lack funds to pay promised benefits; and that plans might be terminated before necessary funds had been accumulated, depriving employees of promised benefits.

*Id.* This purpose is borne out in the statute, as well as the case law, which compel the conclusion that stock option agreements, like the one at issue here, are not employee welfare benefit plans within the purview of ERISA. Accordingly, because Plaintiff has failed to allege the existence of an employee benefit plan under ERISA, his ERISA claim must be dismissed.[1]

## III. *Plaintiff's Remaining Claims are Dismissed*

Having found that the allegations in the Amended Complaint do not support federal jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's

---

[1] Plaintiff's application for leave to amend, contained in a footnote in his memorandum of law in opposition to the instant motion, is denied as the new allegations provided in the proposed Second Amended Complaint would not cure the jurisdictional defect. Thus, any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining leave to amend should be denied where the proposed amendment would be futile).

remaining claims.  *See* 28 U.S.C. § 1367(c)(3).  Accordingly, with the exception of Plaintiff's claim pursuant to the New York Labor Law, which he has voluntarily withdrawn, (*see* Pl.'s Mem. at 1), Plaintiff's state law claims are dismissed without prejudice.  Count six, the Labor Law claim, is dismissed with prejudice.

## *CONCLUSION*

For all of the above reasons, Defendant's motion is granted and the Complaint is dismissed in its entirety.  Since this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, those claims, with the exception of Plaintiff's Labor Law claim, are dismissed without prejudice; the Labor law claim is dismissed with prejudice.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: December 29, 2005
      Central Islip, New York      /s              
                                          Denis R. Hurley,
                                          United States District Judge